STATE OF WISCONSIN  )
                                    ) ss:
DANE COUNTY  )

### AFFIDAVIT OF SEAN MARKS

I, Sean Marks, having been duly sworn, state as follows:

1. I am currently employed by Kraft Foods Global, Inc. in the position of Senior Marketing Director for Oscar Mayer Cold Cuts and Hot Dogs. I have been employed by Kraft for more than eleven years and have served in my present position for two and one half years.

2. In my current position, my responsibilities include, but are not limited to, marketing, pricing, promotions, distribution, new products, packaging and advertising for all Oscar Mayer retail cold cuts and hot dogs manufactured and sold by Kraft and its subsidiaries. Based on my more than eleven years of experience at Kraft, including my two and a half years as Senior Marketing Director for Oscar Mayer Cold Cuts and Hot Dogs, I am familiar with the processes, costs and implementation of Kraft's advertising and marketing practices.

3. My understanding is that a lawsuit was filed in the Superior Court of the State of New Jersey against Kraft and other companies who distribute and sell hot dogs and other products that the complaint referred to as "processed meat products." My understanding is that the complaint defines "processed meat products" to include hot dogs, ham, bacon, pastrami, salami, bologna, liverwurst, bratwurst, sausage, luncheon meat, "and depending on the processing, hamburgers and minced meat."

4. Products distributed or sold by Kraft that fall within this definition of processed meat products and that are within my area of responsibility at Kraft include more than 200 product varieties of Oscar Mayer hot dogs, salami, bologna, liverwurst, ham cold cuts and luncheon meat. Bacon and sausage are other products distributed or sold by Kraft that fall within

1789778.4

this definition of processed meat products but those product categories are outside my area of responsibility at Kraft.

5. The complaint seeks to enjoin Kraft from advertising or selling processed meat products within the State of New Jersey without certain warnings and labeling changes. The complaint also "seeks relief through mandatory warning signs or labels" regarding Kraft's products and requests that the "warnings should be prominently included in Defendants' internet and New Jersey based advertisements, as well as on Defendants' websites and retail packages of processed meat products sold in New Jersey."

6. Kraft maintains its retail sales figures for processed meat products on the basis of sales per customer and not on a state by state basis. However, reliable estimates of Kraft's sales of processed meat products in New Jersey can be derived from the total sale figures using census and industry data.

7. The A.C. Nielsen Company tracks and maintains company sales data for various metropolitan areas around the country but does not maintain such records on a state by state basis. Sales for a portion of the state of New Jersey are included in data maintained by the A.C. Nielsen Company for the Philadelphia metro area and sales for the remainder of the state of New Jersey are included in data maintained for the New York City metro area. Using census data from the 2000 United States Census, a determination was made of the percentage of residents included in the data for the Philadelphia metro area and the New York City metro area who were residents of the state of New Jersey. These percentages were then applied to the sales figures for the metro areas for each processed meat product as defined by plaintiffs' complaint to arrive at an estimate of the annual New Jersey sales for processed meat products.

1789778.4

8. Using the methodology outlined in paragraph 7 above, a fair estimate of Kraft sales of processed meat products in New Jersey in 2008 is more than $48 million. Using this same approach, a fair estimate of the annual sales for processed meat products in New Jersey for each of the years 2003 through 2007 would be between approximately $32 and $44 million.

9. The processed meat products identified in paragraph 4 above that are sold by Kraft in New Jersey are manufactured, packaged and labeled in plants located outside of New Jersey. These plants also supply these same Kraft processed meat products to customers for sale in many states other than New Jersey. Because the products distributed for sale in New Jersey and other states from these plants are produced on the same production lines, any mandated change in the labeling of products to be sold in New Jersey would necessitate that Kraft implement the same change in the labeling of all products produced from that same line, regardless of the product's ultimate destination, or that Kraft create separate production lines for product to be sent to New Jersey and product to be sent to other states, or take other steps to comply with any injunction issued by this court.

10. If injunctive relief ultimately ordered in this proceeding requires immediate implementation of labeling changes, retailers in New Jersey would need to remove current Kraft processed meat products from their shelves at Kraft's expense and Kraft would need to prevent any further distribution of such products to its customers for sale in New Jersey. In estimating Kraft's costs to remove products from New Jersey retail outlets, I spoke with Kraft's outside vendor for implementing product withdrawals and recalls, RQA, Inc. To remove product from retail outlets, Kraft would incur its contractual per store and hourly charges for RQA representatives to visit every New Jersey store to remove product from shelves and inventory,

3

and would incur costs for the repurchase of products from retailers, for product destruction, and costs of materials, which RQA estimated would total approximately $3.7 million.

11.     If injunctive relief ultimately ordered in this proceeding requires implementation of labeling changes to Kraft processed meat products, Kraft would need to design new labels for all affected products and would need to gain all necessary internal and external approval of the redesigned labels. I estimate that the process of designing and gaining approval for the new labels will cost approximately $1.3 million.

12.     I estimate that the process of re-designing new labels for the processed meat products would take eight weeks to complete, during which time Kraft would be unable to sell those products in New Jersey. Based on my analysis set forth in paragraph 8 above, I estimate that Kraft's lost sales in New Jersey for that eight week period would total approximately $7 to $8 million.

13.     If injunctive relief ultimately ordered in this proceeding requires that Kraft develop and employ in-store notices to disclose information about its processed meat products, Kraft would incur approximately an additional $697,000 in costs of compliance.

14.     If injunctive relief ultimately ordered in this proceeding requires that Kraft implement changes to its internet and websites, as well as to its New Jersey marketing and advertisements, Kraft would need to implement changes that would necessarily impact its national marketing, advertising and web-based promotional efforts. I estimate that Kraft would incur approximately $2.4 million in costs of compliance.

15.     Compliance with the labeling and disclosure obligations sought by Plaintiffs could also force Kraft to implement significant changes in its production processes, including the use of regular, perhaps monthly, production line changeovers, to separately package and label

4

those products to be sold in New Jersey that are subject to this court's order from those products that will be sold elsewhere. The regular use of production line changeovers to package and label affected New Jersey products would cost Kraft approximately $4.0 million on an annualized basis.

16. Compliance with the labeling and disclosure obligations sought by Plaintiffs could also result in additional costs to Kraft through necessary reporting to shareholders, the SEC, other government agencies, etc., as well as other costs the company might incur on a national basis as a result of complying with the order of a New Jersey court. I have not attempted to quantify these costs.

_____
Sean P. Marks       8/27/2009

Subscribed and sworn to before me
this 27 day of August 2009

_____
Notary Public

5

1789778.4