STATE OF ILLINOIS   )
                    ) ss:
DuPAGE COUNTY       )

I, Angela Joyner, being duly sworn, state as follows:

1.   I am currently employed by ConAgra Foods Inc. in the position of Senior Vice President and General Manager for the Refrigerated Portfolio. I have been employed by ConAgra for more than 8 years.

2.   In my current position, my responsibilities include, but are not limited to, marketing, pricing, promotions, distribution, new products, manufacturing, packaging, labeling, distributing, and advertising for all refrigerated foods manufactured and sold by ConAgra. Based on my more than 8 years of experience with ConAgra, I am familiar with the processes, costs, and implementation of ConAgra's advertising, marketing, manufacturing, and labeling practices.

3.   My understanding is that a lawsuit was filed in the Superior Court of the State of New Jersey against ConAgra and other companies who distribute and sell hot dogs and other products that the complaint referred to as "processed meat products." My understanding is that the complaint defines "processed meat products" to include hot dogs, ham, bacon, pastrami, salami, bologna, liverwurst, bratwurst, sausage, luncheon meat, and "depending on the processing, hamburgers and minced meat."

4.   Products distributed or sold by ConAgra that fall within this definition of processed meat products and that are within my area of responsibility include approximately 48 products manufactured under the Hebrew National brand, including hot dogs. There are a number of other processed meat products manufactured and/or

distributed by ConAgra that fall within this definition and that are not the subject of this affidavit, including products under the Libby's brand.[1]

5.      The complaint seeks to enjoin ConAgra from advertising or selling processed meat products within the State of New Jersey without certain warnings and labeling changes. The complaint also "seeks relief through mandatory warning signs or labels' regarding ConAgra's products and requests that the "warnings should be prominently included in Defendants' internet and New Jersey-based advertisements, as well as on Defendants' websites and retail packages of processed meat products sold in New Jersey."

6.      ConAgra maintains sales numbers for processed meats in New Jersey. Based the numbers I have seen, the sales total for processed meats distributed under the Libby's brand to New Jersey for FY2009 was $12,580,128.64. The sales total for Hebrew National products to New Jersey for FY2009 was $28,987,643. When combined, these figures demonstrate that ConAgra sold at least $41.5 million worth of processed meats in New Jersey in the last fiscal year alone.

7.      The Hebrew National processed meat products identified in paragraph 4 that are sold by ConAgra in New Jersey are manufactured, packaged, and labeled in plants located outside of New Jersey. These plants also supply these same Hebrew National processed meat products to customers for sale in many states other than New Jersey. Because the products distributed for sale in New Jersey and other states from these plants are produced on the same production lines, any mandated change in the labeling of products to be sold in New Jersey would necessitate that ConAgra change its

---

[1] There are a number of other ConAgra products that may also fall under the definition of processed meats set forth in the lawsuit. I have not attempted to quantify the costs of complying with the relief sought by plaintiffs for any products other than meats under the Hebrew National brand.

2

08/28/2009 10:59   6308571138                      ENBLERS                            PAGE  04

production process. This changeover would result in lost production costs of an estimated $126,000 annually.

8. If injunctive relief ultimately ordered in this proceeding requires immediate implementation of labeling changes, retailers in New Jersey would need to remove current ConAgra processed meat products from their shelves at ConAgra's expense, prevent any further distribution of such products to its customers for sale in New Jersey, and move the products to other markets. I estimate that to comply with this requirement for Hebrew National products alone would cost at least an estimated $250,000. If ConAgra instead had to change its label for Hebrew National products nationally, it would be forced to write off an estimated $1 million in packaging and incur costs of up to an estimated $2 million for costs of reset and return management.

9. If injunctive relief ultimately ordered in this proceeding requires implementation of labeling changes to ConAgra processed meat products, ConAgra would need to design new labels for all affected products and would need to gain all necessary internal and external approval of the redesigned labels. This would include changing the artwork on 48 SKUs and 35 shippers at a cost of $9000 per film including design, prepress, and plate change. In addition, there is a $5000 per shipper plate change. I estimate that the processing of designing and gaining approval for the new labels for Hebrew National products only will cost approximately an estimated $600,000.

10. I estimate that for every week it would take to complete the process of re-designing new labels for Hebrew National brand processed meat products (during which time ConAgra would be unable to sell those products in New Jersey), ConAgra could lose up to $1 million in sales.

11. If injunctive relief ultimately ordered in this proceeding requires that ConAgra implement changes to its advertising, including print, television, internet, and websites, for Hebrew National products, ConAgra would need to implement changes that would

3

necessarily impact its national marketing, advertising, consumer communication, and web-based promotional efforts. I estimate that ConAgra would incur up to $250,000 in costs of compliance to make such changes.

12. In addition, I estimate that ConAgra would also incur an additional working capital cost of approximately $150,000 annually for the cost of storing unique packaging materials and finished product associated with the New Jersey-only label for Hebrew National products. There would also be an annual cost penalty of approximately $100,000 for smaller purchase quantities of unique packaging material.

13. Furthermore, if injunctive relief was ultimately ordered in this proceeding, ConAgra would also be forced to incur costs for special new inventory management methods including a special transportation infrastructure. I estimate these costs would be up to $250,000 annually for Hebrew National products.

14. Compliance with the labeling and disclosure obligations sought by Plaintiffs could also result in additional costs to ConAgra through necessary reporting to shareholders, the SEC, other government agencies, etc., as well as other costs the company might incur on a national basis as a result of complying with the order of a New Jersey court. I have not attempted to quantify these costs.

4

PAGE 5/6 * RCVD AT 8/28/2009 12:04:51 PM [Eastern Daylight Time] * SVR:RIGHTFAX/4 * DNIS:5409 * CSID:6308571138 * DURATION (mm-ss):01-06

15.  In addition, other than the sales figures for Libby's products mentioned in paragraph 6, I have not attempted to quantify the costs of complying with injunctive relief for any of Libby's products. However, I have every reason to think that such compliance costs would be similar to the costs I have estimated for Hebrew National products. The same is true for any other ConAgra products that may fall under the definition of processed meats including Slim Jim products.

Subscribed and sworn to before me
This 28 day of August 2009

*Amelie A. Pappalas*
Notary Public

OFFICIAL SEAL
AMELIE A PAPPALAS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/14/10

5