NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN O'DONNELL, RUTHANN HILLAND, and MICHELLE DE SCISCIOLO, for themselves and a class similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KRAFT FOODS, INC., SARA LEE CORP., CONAGRA FOODS, INC., NATHAN'S FAMOUS, INC., and MARATHON ENTERPRISES, INC., <br><br> Defendants. | Civil Action No.: 09-4448 <br><br> **OPINION** |

For Plaintiffs: Leonard Egert (*Egert & Trakinski*)
　　　　　　　Amy Trakinsky (*Egert & Trakinski*)
For Defendants: John Tortorella (*Marino, Tortorella & Boyle, P.C.*)
　　　　　　　Kevin Marino (*Marino, Tortorella & Boyle, P.C.*)
　　　　　　　Dean Panos (*Jenner & Block LLP*)
　　　　　　　Richard P. Steinken (*Jenner & Block LLP*)
　　　　　　　Philip L. Harris (*Jenner & Block LLP*)

**LINARES**, District Judge.

　　This matter comes before the Court on the motion to dismiss [CM/ECF #34] filed by Defendants Kraft Foods, Inc., Sara Lee Corp., Conagra Foods, Inc., Nathan's Famous, Inc., and Marathon Enterprises, Inc. (collectively "Defendants"). No oral argument was held. Fed. R. Civ. P. 78. For the reasons set forth herein, the motion to dismiss is granted.

**BACKGROUND**

Plaintiffs John O'Donnell, Ruthann Hilland, and Michelle De Scisciolo (collectively "Plaintiffs") are New Jersey residents who have purchased hot dogs distributed or sold by Defendants in New Jersey stores. They allege that hot dogs and other processed meat products that Defendants distribute or sell in New Jersey increase the risk of cancer if consumed in sufficient quantities, and that they were not warned by Defendants of the carcinogenic dangers of processed meat. Plaintiffs seek damages for themselves and injunctive relief on behalf of themselves and a class of similarly situated individuals under the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1 et seq. (the "CFA"). The damages sought by the named plaintiffs are the total cost of their hot dog purchases during the relevant period of time; the injunctive relief sought on behalf of the class is a new label to be placed on product packages and advertising. The new label sought by Plaintiffs reads, "WARNING: CONSUMING HOT DOGS AND OTHER PROCESSED MEATS INCREASES THE RISK OF CANCER."

**DISCUSSION**

Defendants seek dismissal of the entire complaint, arguing that it is preempted by the Federal Meat Inspection Act, 21 U.S.C. §§ 601 et seq., that it should be dismissed under the primary jurisdiction doctrine, that Plaintiff's must seek their remedy under the New Jersey Products Liability Act, and that no claim has been stated under the CFA.

**I.     Legal Standard**

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient.  Id.  However, a plaintiff is not required to plead every element of a prima facie case, but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (internal quotations omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;][t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.  It is the underlying specific facts alleged in a complaint that should be treated as true and evaluated.

Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). However, "a document integral to or explicitly relied on in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted, alteration in original).

## II.   The Products Liability Act's Effect on Plaintiffs' Claims

Defendants maintain that the New Jersey Products Liability Act (the "PLA"), N.J.S.A. §§

2A:58C-1 to 11, should govern Plaintiffs' claims because Plaintiffs actually seek recovery not for an economic loss, but for their alleged increased risk of cancer. (Def. Br. 19-22.) Plaintiffs argue that they have limited their claim to recovery permissible under the CFA rather than the PLA, and that the complaint may not be dismissed on this ground. (Pl. Opp. Br. at 20-22.)

The PLA defines a "product liability claim" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. § 2A:58C-1(b)(3). It defines "harm" in relevant part as "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm[.]" N.J.S.A. § 2A:58C-1(b)(2). The PLA permits recovery for product liability claims under the following circumstances:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. § 2A:58C-2. In differentiating between CFA and PLA claims, the New Jersey Supreme Court has ruled that a plaintiff cannot maintain a PLA claim within the guise of a CFA claim. Sinclair v. Merck & Co., Inc., 948 A.2d 587, 596 (N.J. 2008). "The language of the PLA represents a clear legislative intent that, despite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product." Sinclair, 948 A.2d at 596. In defining the scope of the PLA in the context of lead paint nuisance litigation, the New

Jersey Supreme Court described a PLA cause of action as follows:

> The language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products. See N.J.S.A. 2A:58C-1b(3) (defining "product liability action"). That language encompasses both the product at issue here and the harms plaintiffs attribute to that product. There can be no doubt that the paint products distributed or sold by defendants were intended to be used by consumers. Similarly, the harms plaintiffs seek to vindicate in this action are addressed in the context of a products liability claim. Those harms include "physical damage to property[,] . . . personal physical illness [or] injury," and the like. N.J.S.A. 2A:58C-1b(2).
>
> Were there any doubt about the essential nature of the claims asserted by plaintiffs, a careful reading would demonstrate that they sound in products liability causes of action. The central focus of plaintiffs' complaints is that defendants were aware of dangers associated with lead-and by extension, with the dangers of including it in paint intended to be used in homes and businesses- and failed to warn of those dangers. This classic articulation of tort law duties, that is, to warn of or to make safe, is squarely within the theories included in the PLA. See N.J.S.A. 2A:58C-2. In light of the clear intention of our Legislature to include all such claims within the scope of the PLA, we find no ground on which to conclude that the claims being raised by plaintiffs, regarding an ordinary household product used by consumers, were excluded from the scope of that Act.

In re Lead Paint Litig., 924 A.2d 484, 503-04 (N.J. 2007). Although the Plaintiffs' complaint in this case is brought as a CFA claim, rather than a nuisance claim, this Court finds the analysis by the New Jersey Supreme Court instructive. Plaintiffs seek a warning label attached to processed meats and advertisements for same. They predicate this necessity upon the increased risk of cancer—a form of physical illness or harm—caused by the processed meats. "This classic articulation of tort law duties, that is, to warn of or to make safe, is squarely within the theories included in the PLA." Id. at 503. Although Plaintiffs seek no recovery for any harm they have

suffered, and attempt to frame their injury as purely economic harm, the PLA governs "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. § 2A:58C-1(b)(3).  Here, economic harm under the CFA is the theory underlying the claim, because the Plaintiffs are seeking damages and an injunction due to the increased risk of cancer they allege arises from consumption of a product.  Plaintiffs' attempt to tack a CFA remedy onto the underlying products liability claim does not alter the analysis: their theory that they are entitled to recovery of their purchase price for the hot dogs depends upon Defendants' alleged failure to warn of their increased risk of cancer, a failure of "adequate warnings or instructions" covered by the PLA.  N.J.S.A. § 2A:58C-2.  Plaintiffs' claim must, therefore, be dismissed without prejudice as one that cannot be brought under the CFA because it is within the scope of the PLA.  Sinclair, 948 A.2d at 596.

As the complaint must be dismissed because it is not properly the subject of a CFA claim, this Court declines to address the other arguments put forward by the Defendants.

## CONCLUSION

For the reasons heretofore set forth, Defendants' motion to dismiss is granted.


DATED: March 18, 2010                                                   /s/ Jose L. Linares
                                                                             United States District Judge